1

2

3

4                        UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    PATTI R S.,[1]                              Case No. 24-cv-02115-SK
                  Plaintiff,
8
           v.                                    **ORDER ON CROSS-MOTIONS FOR**
9                                                **SUMMARY JUDGMENT**

10   MARTIN O'MALLEY, et al.,                     Regarding Docket No. 15
                  Defendants.
11

12          This matter comes before the Court upon consideration of Plaintiff Patti R. S.'s motion for

13   summary judgment and the cross-motion for summary judgment filed by Defendant, the

14   Commissioner of Social Security (the "Commissioner").  Pursuant to Civil Local Rule 16-5, the

15   motion has been submitted on the papers without oral argument.  Having carefully considered the

16   administrative record, the parties' papers, relevant legal authority, and the record in the case, the

17   Court hereby DENIES Plaintiff's motion and GRANTS the Commissioner's cross-motion for the

18   reasons set forth below.

19                                  **BACKGROUND**

20          Plaintiff was born on July 28, 1966.  (Administrative Record ("AR") 95, 309.)  On May

21   28, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits,

22   alleging she was disabled starting on June 16, 2020, due to glaucoma, hypertension, high

23   cholesterol, type II diabetes, migraines, fibromyalgia, shoulder injury, knee injury, neck pain, and

24   back pain.  (AR 96, 309-315.)  On July 15, 2021, Plaintiff also filed a claim for supplemental

25   social security income.  (AR 316-325.)

26

27          [1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure
     5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case
28   Management of the Judicial Conference of the United States.

United States District Court
Northern District of California

1    On May 1, 2023, Plaintiff, accompanied by counsel, testified at a hearing before the

2    Administrative Law Judge ("ALJ").  (*Id.*)  Plaintiff and vocational expert, Carrie Anderson, both

3    testified at the hearing.

4    The ALJ found that Plaintiff meets the insured status requirements of the Social Security

5    Act through December 31, 2025, and that she had not engaged in substantial gainful activity since

6    June 16, 2020, her allege onset date.  (AR 13.)  The ALJ held that Plaintiff has the following

7    severe impairments: right shoulder impingement syndrome, degenerative joint disease, and tears,

8    status post arthroscopy with Mumford and decompression, left shoulder degenerative joint disease

9    and tears, status-post arthroscopy with Mumford and decompression, obesity, asthma, and

10   migraines.  (AR 14.)  He further held that Plaintiff does not have a listed impairment and that she

11   retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR

12   404.1567(a) and 416.967(b) except:

13       that she is able to stand and/or walk for a total of six hours and is able
         to sit for a total of six hours in an eight-hour workday. She can
14       occasionally reach overhead with both upper extremities; can
         frequently stoop, kneel, crouch, or crawl; can frequently climb stairs
15       or ramps; can occasionally climb ladders, ropes, or scaffolds; and can
         occasionally be exposed to vibrations, unprotected heights, or moving
16       machinery parts. The claimant can have occasional exposure to
         atmospheric conditions as defined in the Dictionary of Occupational
17       Titles (DOT) and Selected Characteristics of Occupations (SCO),
         such as dust, noxious, odors or fumes, poor ventilation, extreme heat,
18       or extreme cold. She can never be exposed to strobe lights or to
         flashing lights and requires a moderate noise work environment as
19       defined in the DOT and SCO.

20   (AR 16-18.)  The ALJ then concluded that Plaintiff is capable of performing her past relevant

21   work as a medical insurance clerk as actually and generally performed and as a receiving checker

22   as actually performed by Plaintiff but not as performed in the Dictionary of Occupational Titles.

23   (AR 22-23.)  Therefore, the ALJ found that Plaintiff did not qualify for disability benefits.  (AR

24   23.)

25   Plaintiff now moves for summary judgment on the grounds that the ALJ erred in assessing

26   Plaintiff's mental impairments as non-severe and in his rejection of Plaintiff's testimony about

27   symptoms.

28   **ANALYSIS**

United States District Court
Northern District of California

2

United States District Court
Northern District of California

**A.      Standard of Review.**

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the findings by the Administrative Law Judge ("ALJ").  *Reddick*, 157 F.3d at 720.  The ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation.  *Id.* at 720-21.

**B.      Legal Standard for Establishing a Prima Facie Case for Disability.**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520.  The plaintiff bears the burden of establishing a *prima facie* case for disability in the first four steps of evaluation.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).  However, the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five-step analysis proceeds as follows.  First, the claimant must not be engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 416.920(c).  To be considered severe, a medical impairment must significantly limit physical or mental ability to do basic work activities and must be of twelve months duration or be expected to last for at least twelve months.  (*Id.*)  Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of impairments presumed severe enough to preclude work), benefits are awarded without consideration of the claimant's age, education, or work experience.  20 C.F.R. § 20 C.F.R.

1    404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the

2    ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC")

3    based on all relevant medical and other evidence in the claimant's case record.  20 C.F.R. §

4    416.920(e).  The RFC measurement describes the most an individual can do despite his or her

5    limitations.  *Id.* § 404.1545(a)(1).  If the claimant has the RFC to perform past relevant work,

6    benefits will be denied.  *See id.* § 404.1520(f).  If the claimant cannot perform past relevant work,

7    the ALJ will proceed to step five.  *Id.*

8         At step five, the ALJ determines whether the claimant can make an adjustment to other

9    work.  20 C.F.R. § 404.1520(f)(1).  If the claimant can make the adjustment to other work, the

10    ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other

11    work, the ALJ will find that the claimant is disabled.  *Id.* at 404.1520(e) and (g).  There are two

12    ways to make this determination: (1) by the testimony of an impartial vocational expert or by

13    reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2.  *Id.*

**C.    Whether an Impairment is Severe at Step Two.**

15         Plaintiff argues that the ALJ erred in determining that her mental impairment was not

16    severe at step two.  Under step two, "[a]n impairment or combination of impairments is not severe

17    if it does not significantly limit [a claimant's] physical or mental ability to do basic work

18    activities."  20 C.F.R. § 916.922.  Additionally, under the second step, an impairment must meet

19    the durational requirement of lasting, or be expected to last, for at least twelve months.  20 C.F.R.

20    §§ 416.909; 416.920(a)(4)(ii).  Importantly, an impairment must be established by objective

21    medical evidence (medical signs, laboratory findings, or both) from an acceptable medical source

22    and cannot be established on the basis of a claimant's symptoms alone.  20 C.F.R. §§ 416.913;

23    416.921; *see also* 20 C.F.R. § 404.1521 ("impairment(s) must result from anatomical,

24    physiological, or psychological abnormalities that can be shown by medically acceptable clinical

25    and laboratory diagnostic techniques. . . . We will not use your statement of symptoms, a

26    diagnosis, or a medical opinion to establish the existence of an impairment(s).").

27         The step-two inquiry has been defined as "a de minimis screening device to dispose of

28    groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996.)  A medical impairment

United States District Court
Northern District of California

4

1   may be "found 'not severe' only if the evidence establishes a slight abnormality that has 'no more

2   than a minimal effect on an individual's ability to work.'"  *Id.* (quoting SSR 85–28).

3   Nevertheless, Plaintiff must still meet her burden to show "that [she] suffers from a medically

4   determinable impairment" and "that these impairments or their symptoms affect [her] ability to

5   perform basic work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001)

6   (citing Soc. Sec. Rulings 96-3p and 96-7p); *see also Hurter v. Astrue*, 465 F. App'x. 648, 650 (9th

7   Cir. 2012) (unpublished) (plaintiff "had the burden of proving that her impairments affected her

8   ability to perform basic work activities.").  If "there is no allegation of a physical or mental

9   limitation or restriction of a specific functional capacity, and no information in the case record that

10  there is such a limitation or restriction," then the ALJ "must consider the individual to have no

11  limitation or restriction with respect to that functional capacity."  Soc. Sec. Ruling 96-8p.

12  Additionally, when claimants are successfully treated with over-the-counter medication and other

13  conservative treatment, an impairment is not severe.  *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th

14  Cir. 2007).

15          Notably, here, Plaintiff did not even allege in either of her applications for disability

16  benefits that she had a mental impairment or testify at the hearing regarding any mental

17  impairment, even upon questioning by her own attorney.  (AR 67-88, 96, 309-325, 347.)  Nor did

18  she mention any mental impairment in any of her written submissions.  (AR 347, 395-96.)

19  Moreover, her own attorney did not raise the issue of any mental impairment in Plaintiff's

20  prehearing memorandum.  (AR 457-59.)  Additionally, Plaintiff has still not even argued – let

21  alone pointed to any supporting evidence in the record showing – how her belatedly-asserted

22  mental impairment actually affects her ability to perform basic work activities.

23          Nevertheless, because Plaintiff submitted medical records after the hearing showing that

24  she was treated by a licensed marriage and family therapist, Cherie McCarthy, L.M.F.T.

25  ("McCarthy"), the ALJ addressed Plaintiff's mental impairment in his decision.  The ALJ noted

26  that Plaintiff reported "depression, childhood issues, 'crazy' dreams, anxiety, low mood, and

27  intrusive thoughts and that Plaintiff had received mental health treatment once in September 2022

28  and then again in January through April 2023.  (AR 15 (citing AR 893-96, 901-13).)  Although

United States District Court
Northern District of California

United States District Court
Northern District of California

1    McCarthy made some observations of Plaintiff's dysphoric mood, poor insight, and "moderately

2    impaired" functional status, the ALJ noted that McCarthy's other findings were "typically

3    unremarkable without any evidence of significant deficits." (AR 15 (citing AR 893-96, 901-13).)

4    The ALJ further observed that other medical records in the record reflect "generally unremarkable

5    observations with respect to her mental functioning, including observations that she is pleasant,

6    alert, and orientated. (AR 15 (citing AR 842-44, 852).) Finally, the ALJ relied on the fact that

7    Plaintiff's daily activities, including that she joined a gym and spent all day at a county fair with a

8    friend, indicated that Plaintiff had little issues with managing her symptoms or interacting with

9    others in these situations. (AR 15.) Thus, the ALJ found that Plaintiff had no limitation in

10   understanding, remembering, or applying information or in adapting or managing herself and had

11   a mild limitation in interacting with others and in concentrating, persisting, or maintaining pace.

12   (AR 15-16.) Because the ALJ determined that Plaintiffs' mental impairment caused no more than

13   a mild limitation in any of the functional areas and the evidence did not otherwise indicate that she

14   had more than a minimal limitation in her ability to do basic work, the ALJ held that her mental

15   impairment was not severe. (AR 16.)

16        Plaintiff simply argues that ALJ only offered a summary of the medical evidence in the

17   record without any analysis or explanation. Upon review of the AJL's decision, the Court

18   disagrees. The ALJ considered her limited treatment history, her activity reports, and her overall

19   unremarkable objective signs of any mental impairment. Moreover, despite the fact that it is

20   Plaintiff's burden to prove that her mental impairment affects her ability to perform basic work

21   activities, she fails to point to any evidence in the record to show that her mental impairment

22   caused more than a mild limitation in any of the functional areas or evidence that she had more

23   than a minimal limitation in her ability to do basic work. *Edlund*, 253 F.3d at 1159-60. At most,

24   Plaintiff points to an unspecified finding of "moderate" functional impairment by McCarthy but

25   no description of what functions or how such functions were impaired. (Dkt. No. 15 (citing AR

26   903).) Additionally, while McCarthy noted Plaintiff's functional status as "moderately impaired"

27   and Plaintiff's mood as dysphoric with a congruent affect, McCarthy also found that Plaintiff was

28   orientated to person, place and time, her general appearance, interview behavior, dress, and

United States District Court
Northern District of California

1  thought content were appropriate, her speech was normal, her insight was fair on all but one visit,

2  her judgment and impulse control were either fair, good or not assessed, her memory, attention

3  and concentration were not assessed, her thought process was unremarkable on all but one visit,

4  and her perception was unremarkable.  (AR 901, 903, 906, 908, 910, 912.)  At no time did

5  McCarthy increase Plaintiff's medication and never indicated how Plaintiff's abilities to

6  understand, remember, or apply information, adapt or manage herself, interact with others, or

7  concentrate, persist, or maintain pace were affected.  Moreover, McCarthy estimated that Plaintiff

8  would reach her therapy objectives within six months of treatment.  (AR 905.)  Therefore, even if

9  McCarthy did find that Plaintiff was limited in a functional area, it would not support a finding

10  that Plaintiff had an impairment that met the durational requirement of lasting, or be expected to

11  last, for at least twelve months.  20 C.F.R. §§ 416.909; 416.920(a)(4)(ii).

12      Finally, Plaintiff accuses the ALJ of failing to properly account for her non-exertional

13  limitations in her RFC but fails to specify what those limitations should have been or, more

14  importantly, what non-exertional limitations were supported by substantial evidence in the record.

15      Accordingly, the Court finds that the ALJ did not err with respect to Plaintiff's mental

16  impairment.

17  **D.    Plaintiff's Credibility Assessment.**

18      Plaintiff also contends that the ALJ erred in rejecting her complaints regarding her

19  symptoms, particularly with respect to her level of pain and her migraine headaches.  "The ALJ is

20  responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

21  ambiguities."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  "The ALJ's findings,

22  however, must be supported by specific, cogent reasons."  *Id*.  In evaluating the credibility of a

23  claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis.  *Molina v.

24  Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 752 F.3d 586, 591 (9th Cir.

25  2009)).

26      First, the ALJ must determine if there is "objective medical evidence of an underlying

27  impairment which could reasonably be expected to produce the pain or other symptoms alleged."

28  *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "Once the claimant

United States District Court
Northern District of California

1    produces medical evidence of an underlying impairment, the Commissioner may not discredit the

2    claimant's testimony as to subjective symptoms merely because they are unsupported by objective

3    evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted).

4         Second, if there is no evidence of malingering, "the ALJ can reject the claimant's

5    testimony about the severity of her symptoms only by offering specific, clear and convincing

6    reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation omitted).  "General findings are

7    insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

8    undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (citation omitted).  The ALJ is

9    permitted to consider a number of factors including: (1) inconsistencies in the record concerning

10   Plaintiff's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to

11   follow a prescribed course of treatment; (3) Plaintiff's daily activities; and (4) observations of

12   treating and examining physicians and other third parties.  *See Smolen v. Chater*, 80 F.3d 1273,

13   1284 (9th Cir. 1996).  If the ALJ supports his credibility determination with substantial evidence

14   in the record, the Court may not "to second-guess that decision." *Morgan v. Comm'r of the Soc.*

15   *Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

16        The ALJ recounted Plaintiff's complaints regarding her symptoms: Plaintiff reported

17   difficulty with physical activities such as cooking, cleaning, and daily chores; she testified that she

18   lies down for four to five hours each day and that the pain in her shoulders and upper extremities

19   kept her from working; and she will need a shoulder replacement in the future.  With respect to her

20   migraines, she testified that she has migraines at least twice per month, which can last two weeks

21   and that she receives injections for her migraines but does not take any medication to prevent her

22   migraines.  Plaintiff also stated that treatment for her migraines made her nauseous with little

23   positive effects.  She also testified that her last treatment for carpal tunnel syndrome and elbow

24   tendinitis was in 2012.  (AR 18.)

25        The ALJ determined that Plaintiff's medically determinable impairments could reasonably

26   be expected to cause her alleged symptoms but that her statements regarding the intensity,

27   persistence and limiting effects of those symptoms were not consistent with the medical record

28   and were inconsistent with her notable improvement following treatment for her impairments.

1    (AR 18.)  He noted her long history of treatment for her bilateral shoulder disorders, but after a

2    procedure on her left shoulder, physical therapy and follow up visits, Plaintiff reported

3    improvement despite some ongoing soreness.  (AR 19 (citing AR 550-51, 573-592).)  Moreover,

4    as she reported worsening symptoms in her right shoulder, she noted that she was happy with the

5    outcome of her left shoulder.  (AR 19 (citing AR 526-27, 539).)  Then Plaintiff had a similar

6    procedure on his right shoulder and records afterwards suggested she had some improvement and

7    ongoing treatment with injections.  (AR 19 (citing AR 473-75, 852-53, 868-91).)  Records from

8    her physical therapy sessions included reports that she was sore after carrying groceries but was

9    getting stronger with combing her hair and reaching overhead.  (AR 19 (citing AR 852-53).)  The

10   ALJ noted that since undergoing both of her shoulder operations, Plaintiff demonstrated

11   improvement in functioning and decreased pain.  (AR 20 (citing AR 473-75, 852-53).)  Moreover,

12   although Plaintiff testified that she had difficulties with her day-to-day living, she also reported

13   joining a gym and that she had experienced improvement with exercise.  (AR 20 (citing AR 852-

14   53, 868-91).)  Additionally, the ALJ noted that there was no evidence that her symptoms had

15   worsened October 2021 and that, in fact, there was little evidence of any treatment in 2022.  (AR

16   20.)  The ALJ also noted that since September 2021, Plaintiff received little treatment for her pain.

17   Instead, the records show that Plaintiff was engaging in crafting activities, suggesting her ability to

18   use her upper extremities.  (AR 21 (citing AR 868-91, 902).)

19        With respect to her migraines, although there are records that Plaintiff experienced

20   migraines and was treated with injections that provided short-term relief and that she could not

21   take preventative medicines because they caused her nausea, there were also records in which

22   Plaintiff denied experiencing headaches or migraines, suggesting that her headaches were not

23   consistent.  (AR 19 (citing Ex. 1F at pp. 507, 513, 517, 558, 587, 663, 838, 908).)  Additionally,

24   the ALJ found little support in the record that she required visits to the emergency department for

25   her migraines.  (AR 19.)  The ALJ further noted that the evidence did not establish any continuing

26   treatments in 2022, suggesting that her migraines were controlled well on existing, conservative

27   care.  (AR 21.)

28        Upon consideration of the ALJ's reasoning for discounting Plaintiff's complaints regarding

United States District Court
Northern District of California

9

her symptoms, the Court finds that the ALJ sufficiently supported his decision based on the evidence in the record.  Notably, the ALJ considered Plaintiff's daily activities, evidence of Plaintiff's improvement after receiving treatment, evidence of inconsistent pain and symptoms, and lack of continuing treatment in 2022.  Accordingly, the Court finds that the ALJ did not err.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED**.

Dated: March 12, 2025



SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California